UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADF INTERNATIONAL, INC.,

    Plaintiff,

vs                                                   Case No: 04-72940
                                                   Honorable Victoria A. Roberts

STEELCON, INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING CROSS
MOTIONS FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

This matter is before the Court on the parties cross-motions for summary judgment.  The Court **GRANTS** both motions.

**II.    BACKGROUND**

This matter arises from the construction of the Detroit Lions Stadium at Ford Field, which the parties refer to as the Detroit Lions Ford Field Project ("the Project").  The general contractor on the Project was Hunt Construction Group, Inc. ("Hunt").  Plaintiff ADF International Inc. ("ADF") was Hunt's structural steel subcontractor.  ADF subcontracted a portion of its work to Sova Steel, Inc. ("Sova"), which subcontracted some of its work to Defendant Steelcon, Inc. ("Steelcon").

Three companies to which Steelcon subcontracted its work, Laramie, Inc. ("Laramie"), Midland Equipment Company of Michigan, Inc. ("Midland"), and AME, Inc., d/b/a Eugenio Painting Company ("Eugenio"), sued Steelcon in two actions in Wayne

1

County Circuit Court.[1]  They alleged that Steelcon failed to pay them in full.  In each suit, Hunt and its sureties, United States Fidelity and Guaranty Company ("USF&G") and St. Paul Fire and Marine Insurance Company ("St. Paul"), were also sued for payment under the respective surety bonds.  The USF&G and St. Paul surety bonds assured payment and performance of the obligations of Hunt and its subcontractors.

In Laramie's case, the trial court granted Laramie's motion for summary disposition against Hunt, USF&G and St. Paul and entered a judgment against them in the amount of $370,344.14.  In Eugenio and Midland's case, Steelcon filed a cross-claim against Hunt and its sureties and a third-party claim against the company that provided a surety bond on ADF's behalf, American Casualty Company of Reading, Pennsylvania ("CNA").  ADF's surety bond assured payment and performance of ADF's obligations to its subcontractors.  Steelcon alleged in the cross-claim that it had not been fully paid by ADF and, therefore, sought payment under the surety bonds.  On the day of trial, Steelcon entered into a Consent Judgment with Eugenio and Midland, but proceeded to trial on its claims against Hunt, USF&G, St. Paul and CNA.

One issue in the trial was whether there was a contract between ADF and Steelcon.  Initially, there was no direct contract between the parties.  ADF subcontracted work to Sova, and Sova subcontracted work to Steelcon.  However, ADF, Sova and Steelcon later entered into a joint agreement, called Addendum No. 1, wherein they agreed to modify their respective subcontracts on pricing.  The jury returned a verdict in favor of Steelcon against USF&G, St. Paul and CNA.  The jury also

---

[1] Laramie sued in *Laramie v Steelcon, et al.,* Case no. 02-240028-CK.  Eugenio and Midland sued in *AME v Steelcon, et al.,* Case no. 02-230098-CK.

found that there was a contract between ADF and Steelcon and that the contract was breached by ADF. The jury awarded Steelcon $2 million in damages.

ADF subsequently filed this action against Steelcon asserting several claims under the Addendum No. 1 contract: indemnification (Count I), breach of contract (Count II), and unjust enrichment (Count III). ADF alleges that Steelcon breached various provisions of the contract regarding labor and materials; misappropriated payments made by ADF; and, caused ADF to incur liability via subcontractors Laramie, Eugenio and Midland's (collectively "the subcontractors") lawsuits. ADF claims Steelcon is obligated to reimburse ADF for this liability under Addendum No. 1. Steelcon filed a one-count counterclaim alleging that $3.5 million dollars was owed to it by ADF for work done on the Project. Because it only received $2 million in damages from the sureties via the jury award, Steelcon alleges that ADF owes the remaining $1.5 million.

ADF was not a party to either state court action. However, Steelcon contends that sureties USF&G, St. Paul and CNA were in privity with ADF and asserted ADF's affirmative defenses, claims and charge-backs[2] against Steelcon. Per Steelcon, the sureties argued that they did not owe anything to Steelcon when all of ADF's claims, defenses and charge-backs were credited. Instead, the sureties claimed that Steelcon owed $869,000 to ADF. Steelcon contends that ADF now makes the same arguments on its own behalf in this action, which Steelcon argues is an inappropriate attempt to relitigate claims that ADF essentially lost (via the sureties) in the state court action. Therefore, Steelcon moves for summary judgment alleging that res judicata and

---

[2]The parties do not provide a definition of "charge-backs."

3

collateral estoppel bar ADF from relitigating any aspect of the claims decided in state court.

Because it was not a party to the state court litigation, ADF disputes Steelcon's assertion that res judicata and collateral estoppel bar its (ADF's) claims in this action. However, ADF asserts that Steelcon's counterclaim is barred by res judicata because Steelcon already litigated the same claim for damages that it makes here.

## III.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing

out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

### IV.     ANALYSIS

The parties seek summary judgment of their respective claims on the ground that the claims were already litigated in state court. Plaintiff asserts that Defendant's counterclaim is barred by res judicata. Defendant asserts that Plaintiff's claims are barred by res judicata and collateral estoppel.

#### A.     **Plaintiff's Breach of Contract and Unjust Enrichment Claims are Barred by Res Judicata**

When deciding the preclusive effect of a prior state court action, federal courts must look to state law. *Spence v TRW, Inc.,* 92 F.3d 380, 382 (6th Cir. 1996).

Therefore, Michigan law applies in this case.

Under Michigan law, a second action is barred by res judicata when:

(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.

*Adair v State,* 470 Mich. 105, 121 (2004); *Dart v Dart,* 460 Mich. 573, 586 (1999). There is no dispute in this case that the first element is satisfied. The state court action was resolved by jury trial, a decision on the merits.

To satisfy the second element, it must be proven that this case involves the same parties from the prior action or those in privity with the prior parties. "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair,* 470 Mich. at 122. Michigan courts do not require a perfect identity between a party and a nonparty, but there must be a "substantial identity of interests" and a "working functional relationship" in which the interests of the nonparty are adequately presented and protected by the party in the litigation. *Id*; *Peterson Novelties, Inc. v City of Berkley,* 259 Mich. App. 1, 13 (2003).

Plaintiff was not a party to the state court action, but admits that it is in privity with its surety, CNA, which was a named party. Plaintiff attempts to qualify its admission by further asserting that CNA did not call or cross examine any witnesses, the implication being that its interests were not adequately represented by CNA. However, Plaintiff does not dispute that CNA was present, represented by counsel, and made opening and closing statements. Plaintiff also does not dispute that all of the sureties relied upon the claims and defenses Plaintiff could have asserted on its own behalf, which encompassed the breach of contract and unjust enrichment claims made by Plaintiff in

6

this case.  This common defense among the sureties suggests that they had an interest in calling the same witnesses and eliciting the same testimony on direct and cross examination.  Therefore, it is reasonable to presume that CNA would have simply duplicated the other sureties' efforts had it called the same witnesses and elicited the same testimony.  Plaintiff does not argue or suggest that the defense collectively presented by the sureties was less than thorough and vigorous.  However, Plaintiff does attempt to make a distinction between the defense asserted by the sureties and Plaintiff's present claims, by characterizing the allegations in the Complaint as "affirmative claims for damages" that Plaintiff says were not presented or decided in state court.  But, Plaintiff does not show how its affirmative claims are substantively different from those claims asserted by the sureties as a defense.  Defendant, however, attaches various state court trial exhibits and motions indicating that CNA, USF&G and St. Paul based their defense, at least in part, on the same factual assertions Plaintiff bases the breach of contract and unjust enrichment claims now before the Court.  Defendant also indicates that Plaintiff's CEO, project manager, and auditor participated as defense witnesses.

Plaintiff does not admit or deny that it is in privity with USF&G and St. Paul.  However, there is no apparent distinction between them and CNA.  In fact, there are a number of parallels: 1) Hunt secured surety bonds with USF&G and St. Paul to insure the payment and performance obligations of it *and* its subcontractors, which included Plaintiff; 2) Plaintiff admits that its contract with Hunt obligated it to provide counsel for and indemnify Hunt and its sureties, USF&G and St. Paul, against the claims of subcontractors; and 3) as stated, USF&G and St. Paul asserted Plaintiff's claims and

defenses in opposition to Defendant's claims. For these reasons, the Court finds that Plaintiff is in privity with USF&G, St. Paul, and CNA. And, because Defendant presents unrefuted evidence that Plaintiff's claims and interests were adequately presented in the state court, the Court finds that the second element of the res judicata doctrine is satisfied.

The final element--that the claims here were or could have been resolved in the first action--is also satisfied. Michigan courts broadly apply res judicata to claims previously litigated and those arising out of the same transaction that could have been raised with the exercise of reasonable diligence. *Dart,* 460 Mich. at 586; *Peterson,* 259 Mich. App. at 11. "If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata." *Peterson*, 259 Mich. App. at 11.

As stated, the substance of Plaintiff's breach of contract and unjust enrichment claims was raised and resolved in state court. Plaintiff alleges (in Count II) that Defendant breached their contract by failing to complete certain work, failing to pay subcontractors despite receiving payment from Plaintiff, improper billing for labor, services and/or materials, and misappropriating Plaintiff's tools and equipment. Plaintiff further alleges (in Count III) that Defendant misappropriated payments made to it by Plaintiff, by applying the payments to expenses unrelated to the Project. Defendant attaches several trial exhibits that it asserts were introduced by the sureties in support of each of these claims. Plaintiff does not dispute Defendant's assertion. Rather, Plaintiff again points out that the claims were presented in state court in a defensive posture as set-offs and charge-backs, rather than as affirmative claims as they are raised here. This is a distinction without a difference. It is undisputed that the essence

of the sureties' defense was that the payments Defendant claimed were owed by Plaintiff should have been reduced by Defendant's own contract breaches and misappropriations. Plaintiff makes the same claims here, based on the same facts. Consequently, for res judicata purposes, Plaintiff's "affirmative claims" are the same claims asserted by CNA, USF&G and St. Paul in state court as a defense. Therefore, the third element is satisfied and Plaintiff's breach of contract and unjust enrichment claims are barred by res judicata. It is not necessary for the Court to consider Defendant's alternate argument that the claims are also barred by collateral estoppel.

### B.   Defendant's Counterclaim is Barred by Res judicata

It is undisputed that the first two elements are met with regard to Defendant's counterclaim, and Defendant admits that its claim for damages was raised in the prior action. In fact, Defendant candidly states in its Response to Plaintiff's Motion for Summary Judgment that it believes that res judicata (and collateral estoppel) bars its counterclaim. The Court agrees. Defendant's counterclaim is barred by res judicata.

### C.   Plaintiff's Indemnity Claim is Barred by Collateral Estoppel

"Collateral estoppel, or issue preclusion, precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding." *Ditmore v Michalik,* 244 Mich. App. 569, 577 (2001), *app. den.,* 465 Mich. 896 (2001). *See also Dearborn Heights School District No. 7 v Wayne County MEA/NEA,* 233 Mich. App. 120, 124 (1998). Like res judicata, "a nonparty to an earlier proceeding will be bound by the result if that party controlled the earlier proceeding or if the party's interests were adequately represented

9

in the original matter." *Dearborn Heights*, 233 Mich. App. at 127.

In Count I, Plaintiff alleges that it is entitled to be indemnified under the indemnity provision of its Addendum No. 1 contract with Defendant. In Addendum No. 1, Defendant agreed, upon request, to provide Plaintiff with evidence that it was current in the reporting and payment obligations required by law, equity or contract which might result in a claim against Plaintiff. Pl. Response Exh. A, ¶2.6. Defendant further agreed to "fully indemnify, defend and hold ADF harmless from any and all claims, losses, demands, penalties, assessments, costs, judgments, including attorneys fees and costs, arising out of any such failure of [Steelcon] to account or pay for such items." *Id*. The Defendants' subcontractors, Laramie, Eugenio and Midland, filed suit against Defendant claiming that Defendant failed to pay them in full for labor, materials and supplies. Because Defendant's obligations were insured by the surety bonds held by general contractor Hunt, the subcontractors also sued Hunt and its sureties. Plaintiff's agreement with Hunt required Plaintiff to provide counsel to Hunt and its sureties to defend against the subcontractors' claims and to reimburse Hunt and its sureties for any amounts owed to the subcontractors. Consequently, Plaintiff must reimburse Hunt and its sureties for the amounts owed by Hunt and its sureties as a result of the state court cases. In turn, based on the indemnification clause in Addendum No. 1, Plaintiff asserts that it is entitled to reimbursement from Defendant of the monies it must pay Hunt, USF&G and St. Paul.

Plaintiff argues that its indemnity claim is not barred by res judicata or collateral estoppel, because none of the sureties was at liberty to or did assert this claim in the state court. In *Thornton Construction v United States Fidelity and Guaranty Co.,* 8 Mich.

10

App. 540 (1967), the appellate court affirmed the trial court's refusal to permit the defendant surety to assert the principal's counterclaim in its own defense because the defendant had no interest in the counterclaim. In its analysis, the court quoted extensively from a treatise:

> A surety ordinarily may avail himself of any defense which his principal may have except those purely personal to the principal.
>
> * * *
>
> In accordance with the rule that defenses available to the principal are likewise available to the surety, it has been held that a surety, when sued alone, may set off any claim which the principal may set off against the demand of the creditor; and this privilege is secured to the surety by force of some statutes. It is, however, generally held that, in the absence of a statute permitting it, a surety cannot, when sued alone, avail himself of a claim of the principal against the creditor where he has no interest in the claim except on the insolvency of the principal or the creditor, or unless [t]he principal consents thereto, and it has been assigned to the surety.

8 Mich. App. at 546-547 (*quoting* 72 C.J.S. Principal and Surety §255, p.703 and 72 C.J.S. Principal and Surety §260(b), pp. 705, 706). Because neither Plaintiff's nor Hunt's sureties can claim a direct interest in Plaintiff's indemnity rights under its contract with Defendant, Plaintiff contends that the claim was not and could not have been raised in the prior action.

Even assuming that Plaintiff is correct that the indemnity claim is personal to Plaintiff and could not have been asserted by CNA or the other sureties, Plaintiff is still collaterally estopped from relitigating the underlying basis of its claimed entitlement to indemnity--that Plaintiff performed all of its obligations under the contract between it and Defendant. In its Complaint, Plaintiff alleges that it is entitled to indemnification because it made all of the payments due to Defendant under their contract and Defendant failed

11

to, in turn, pay the subcontractors, which ultimately triggered Plaintiff's indemnification obligations to Hunt and its sureties. *See* Complaint at ¶¶14-16. It is undisputed, however, that the state court jury explicitly found that Plaintiff breached its contract with Defendant. Therefore, the Court finds that the issue of whether Plaintiff made all of the payments due to Defendant was actually and necessarily determined in the prior proceeding.

For the reasons already stated, the Court also finds that Plaintiff is in privity with the sureties, and that Plaintiff's interests were adequately represented. Consequently, Plaintiff is collaterally estopped from relitigating the issue of whether it made all of the payments due to Defendant under their contract, which is one of the facts on which it bases its indemnity claim. Defendant's motion is granted on this claim.

## VI. CONCLUSION

The Court **GRANTS** both Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                            **/s/ Victoria A. Roberts**
                                            **Victoria A. Roberts**
                                            **United States District Judge**

**Dated: September 28, 2005**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 28, 2005.**
>
> **s/Linda Vertriest**
> **Deputy Clerk**